KIPLEY *v.* ILLINOIS.

KIPLEY *v.* ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Nos. 586, 601. Submitted March 14, 1898. — Decided April 18, 1898.

When the jurisdiction of this court is invoked for the protection, against the final judgment of the highest court of a State, of some title, right, privilege or immunity secured by the Constitution or laws of the United States, it must appear expressly or by necessary intendment, from the record, that such right, title, privilege or immunity was specially " set up or claimed " under such Constitution or laws; as the jurisdiction of this court cannot arise in such case from inference, but only from averments so distinct and positive as to place it beyond question that the party bringing the case up intended to assert a Federal right.

MOTION to dismiss. The case is stated in the opinion.

*Mr. Edward C. Akin,* attorney general of the State of Illinois, *Mr. George W. Smith, Mr. Frank P. Blair* and *Mr. Murry Nelson, Jr.,* for the motion.

*Mr. Charles S. Thornton* opposing.

MR. JUSTICE HARLAN delivered the opinion of the court.

The attorney general of Illinois filed in the Supreme Court of Illinois, at its June term 1897, an original petition against Joseph Kipley, superintendent of police of the city of Chicago, and Adolph Kraus, Dudley Winston and Hempstead Washburne, commissioners appointed under the act of the legislature of Illinois in force on and after March 20, 1895, entitled " An act to regulate the civil service of cities."

The application for leave to file the petition was accompanied by a suggestion upon the part of the attorney general that the case involved an interpretation of the above act.

The prayer of the petition was that a writ of mandamus issue commanding Kipley, as superintendent of police of Chicago, to notify the civil service commissioners of all vacancies existing in the positions of assistant superintendent of police, inspector of police and captains of police in the city of Chicago, and commanding the civil service commissioners to submit to Kipley, as superintendent of police, the names of not more than three applicants for promotion for each vacancy from the grade next below that in which such vacancy or vacancies exist, and that the petitioner have such other or further relief as the nature of the case required.

Kipley filed a separate answer, in which he insisted that he had acted, in all respects, in conformity with law. He also averred that although the act regulating the civil service of cities was passed and approved substantially as stated in the petition, and was afterwards submitted to a vote of the electors of Chicago and adopted by a large majority of votes, it was " unconstitutional and void," in that it purported to confer judicial powers and authority to make and enforce judgments and decisions of a nonjudicial body, described and set forth in the act as the civil service commission.

Subsequently, June 28, 1897, the city council of Chicago passed an ordinance designating certain public officers who should be selected by the mayor with the concurrence of the council. Kipley, July 10, 1897, filed a plea, setting forth this ordinance, and alleging, in relation to the appointment by the civil service commissioners of certain subordinate police officers of the city, that they " have been, if they ever were within the same, wholly taken away from and removed out of the control, jurisdiction and power of the said civil service commissioners, so that such matters are now expressly excepted by its very terms from the force and effect of said Civil Service Act."

On the 7th day of October, 1897, Kipley asked leave of the

court to withdraw his plea, and also to amend his answer so as to embody therein averments to the effect that the relator was not entitled to a writ of mandamus and that the court had no jurisdiction or power to grant the same, because the said Civil Service Act of March 20, 1895, was null and void and contrary to the constitution of the State of Illinois and the Constitution of the United States in that —

" 1. It abridges the privileges and immunities of the citizens of the United States, because it operates to exclude from the classified service of such city as therein specified all such citizens as do not apply for office or for place of employment.

" 2. The said act of March 20, 1895, deprives a duly elected and qualified officer of the right to select his subordinates and provide the requisite agencies for performing his official duties, thus abridging the rights, privileges and immunities belonging and guaranteed by the said constitutions, respectively, to every citizen thereof.

" 3. The said act of March 20, 1895, provides for the invasion of the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.

" 4. The said act of March 20, 1895, purports to prescribe for the criminal trial of public officers for nonfeasance, for misfeasance, for malfeasance in office, and for the infliction of penalties therefor, of deprivation of office, of fine, of imprisonment, and incapacity to hold office thereafter by nonjudicial body, and in such manner that the accused shall not enjoy the right to a speedy and public trial by an impartial jury of the State or district wherein the crime shall have been committed; and without informing the accused of the nature and cause of the accusation; and without confronting the accused with the witnesses against him; and without permitting the accused to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for the defence.

" 5. That the said act denies to the citizens the freedom of political action, making it highly penal for the citizen to take part in party politics.

" 6. That said act of March 20, 1895, provides for the creation and maintenance of an office-holding class, at the expense of the people who are excluded therefrom by the operation of the said act.

" 7. And generally said act of March 20, 1895, is directly in contravention of the right of that clause of the United States Constitution which prescribes that 'all persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person the equal protection of the laws.'

" 8. And further, the said act of March 20, 1895, generally denominated the Civil Service Act, is absolutely null and void because the same purports to require the civil officers of the city of Chicago to undergo tests as to qualification for office and public employment in addition to the requirement of section 25 of article 5 of said constitution of the State of Illinois, and because it provides for a political test for the said commissioners respectively therein named, and because further the same is in contravention of section 22 of article 4 of said constitution as well as many other provisions of said state constitution."

Kipley also asked leave to file " a supplemental answer," averring that since the filing of his original answer the city council had passed the above ordinance of June 28, 1897.

The motions for leave to withdraw the plea, to amend the answer and to file a supplemental answer were severally denied.

On a subsequent day of the term Kipley entered a motion to discharge the rule requiring the respondents to answer the petition, and to quash all the proceedings that had been taken, assigning as reason therefor that the Civil Service Act of March 20, 1895, was contrary to the constitution of Illinois and the Constitution of the United States upon certain specified grounds. They were the same as those specified in the

above motion for leave to amend the answer. That motion was also denied.

On the 22d day of December, 1897, the Supreme Court of Illinois rendered its final judgment, granting the relief asked in the petition for mandamus.

The final order of the court was that a writ of mandamus issue, commanding Kipley, superintendent of police of Chicago, to notify the civil service commissioners of all vacancies existing in the positions of assistant superintendent of police, inspectors of police and captains of police in that city, and the civil service commissioners to submit to him, as such superintendent of police, the names of not more than three applicants for promotion for each vacancy from the next grade below that in which such vacancy or vacancies existed.

Kipley, having given previous notice thereof, filed a petition for rehearing on the 8th day of January, 1898, but before that petition was disposed of he sued out a writ of error to this court. That constitutes case No. 586. The rehearing having been denied, he sued out another writ of error, and that constitutes case No. 601. The citation in each case was signed by the Chief Justice of the state court. The cases on motion were consolidated in this court, and are before us on a motion to dismiss each writ of error for want of jurisdiction.

We are of opinion that this court is without jurisdiction to review the final judgment of the Supreme Court of Illinois in these cases. The answer makes no reference whatever to the Constitution or laws of the United States. It is true that it avers that the Illinois Civil Service Act was "unconstitutional and void." But when the jurisdiction of this court is invoked for the protection, against the final judgment of the highest court of a State, of some title, right, privilege or immunity secured by the Constitution or laws of the United States, it must appear expressly or by necessary intendment, from the record, that such right, title, privilege or immunity was "specially set up or claimed" under such Constitution or laws. Rev. Stat. 709. Our jurisdiction cannot arise in such case from inference, but only from averments so distinct and positive as to place it beyond question that the party bringing

the case up intended to assert a Federal right. *Oxley Stave Co.* v. *Butler County,* 166 U. S. 648; *Levy* v. *Superior Court of San Francisco,* 167 U. S. 175, 177. The averment in the answer, that the statute of Illinois was unconstitutional and void, must be taken as intended to apply to the constitution of that State, and not to the Constitution of the United States. In *Miller* v. *Cornwall Railroad,* 168 U. S. 131, 134, this court, speaking by the Chief Justice, said : "We have no jurisdiction on a writ of error to a state court to declare a state law void on account of its collision with a state constitution ; and it was long ago held that where it was objected in the state courts that an act of the State was 'unconstitutional and void,' the objection was properly construed in those courts, as raising the question whether the state legislature had the power, under the state constitution, to pass the act, and not as having reference to any repugnance to the Constitution of the United States. *Porter* v. *Foley,* 24 How. 415."

It is manifest that, when the answer was drawn, neither the defendant Kipley nor the learned counsel representing him intended to raise any question of a Federal nature. We cannot suppose that it occurred to either of them at that time that the Civil Service Act of Illinois was repugnant to the Constitution of the United States.

Nor was any question of a Federal character raised or intended to be raised by the plea which brought before the court the city ordinance of June 28, 1897.

It is, however, said that the motion for leave to amend the answer did specially set up and claim that the Illinois Civil Service Act violated certain rights, privileges and immunities belonging to the plaintiff in error under the Constitution of the United States. But as the Supreme Court of Illinois did not allow the proposed amendment of the answer the questions suggested by the amendment did not arise for determination. To the action of the court in disallowing the amendment, no exception was taken. The grounds upon which these motions were denied appear from the opinion of the court as follows : "By this motion respondent Kipley asks, first, for leave to withdraw his plea ; second, to file an amended answer ; and

third, to file a supplemental answer. Nothing more is before us than the bare motion. No showing has been made nor reasons filed in support of the motion, and we are unable to say whether the motion should be allowed or not, and it must therefore be overruled." *People* v. *Kipley*, 167 Illinois, 638. This action of the state court does not raise a Federal question which this court can examine. The suggestion that the Federal questions which would have been raised, if the answer had been amended as proposed, should be considered upon their merits precisely as they might have been if the motion to amend had been allowed, cannot be entertained for a moment. It was in the discretion of the court to deny the motion to amend, when no reasons were assigned for its allowance, and to hold the parties to the issues made by the original petition and answer; and there is nothing in the record justifying the conclusion that its discretion, in that regard, was exercised with the intent or so as to deprive the defendant either of any right or immunity to which he was entitled under the Constitution or laws of the United States, or of the privilege of setting up or claiming in due time and in proper form any such right or immunity.

It may be observed that the opinion of the state court delivered upon final hearing contains nothing to show that any Federal question was considered or determined. The general subject to which the attention of the court was directed is shown by the following extract from its opinion delivered by Mr. Justice Magruder: " The evils sought to be remedied by legislation of this character are well known and well understood. These evils are such as grow out of what is generally called the ' spoils system.' . . . The foundation principles of the act are that appointments to municipal offices or employments must be made according to merit and fitness, to be ascertained by competitive examinations, free to all; and that promotions from lower to higher grades in the public service must be made upon the basis of merit." *People* v. *Kipley*, 171 Illinois, 60. The validity of the enactment in question was considered by that court with reference only to the state constitution.

In respect of the motion to discharge the rule and all proceedings against the respondents it need only be said that it could have been denied upon the ground that the questions sought to be raised by it might more properly arise upon demurrer, plea or answer. Its denial did not have the effect to bring any Federal question into the record to be determined. It may also be observed that no exception was taken to the action of the state court in relation to this motion.

This court having no jurisdiction to reëxamine the final judgments of the state court in these cases, the motion to dismiss the writs of error is sustained.

*Dismissed.*

Mr. Justice White dissented.