BENJAMIN J. RESNICK *v.* CIVIL SERVICE COMMISSION OF THE CITY OF BRIDGEPORT

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued December 5, 1967—decided January 16, 1968

*Sidney Vogel,* for the appellant (plaintiff).

*John J. McGuinness,* with whom, on the brief, were *Robert J. Testo* and *Mark F. Gross,* for the appellee (defendant).

COTTER, J.   The defendant, the Bridgeport civil service commission, is an agency of the city of Bridgeport charged with the administration of the classified civil service system in Bridgeport.   The commission announced a competitive examination for the position of legal aide in the legal department of the Bridgeport city government.   The notice of the open competitive examination stated that part of this examination was to be written and that an interview might be required to measure the training, experience and general qualifications of the candidate.   The plaintiff took and passed the written examination and was orally interviewed on June 16, 1964, by two examiners for the commission. This interview embraced that portion of the examination suggested by the announcement.   In the course of this oral examination, one of the inter-

viewers inquired as to the plaintiff's court and legal experience, and he further asked the plaintiff if he was a Republican and whether he had ever been associated with the West End Synagogue. The plaintiff was subsequently notified that he had received a grade of 65 on the oral examination. He was not certified to an eligible list for the position and, accordingly, was not appointed. The successful applicant appeared in court and participated in the trial and appellate proceedings in the present case.

The charter of the city of Bridgeport, as amended by No. 407 of the 1935 Special Laws (22 Spec. Laws 261), provided for the establishment of a civil service commission. Section 9 of the civil service provisions of the charter is entitled "Tests of Employment and Promotion" and provides in pertinent part as follows: "No question in any test shall relate to religious or political opinions or affiliations." 22 Spec. Laws 265, No. 407 § 9.

The trial court concluded that questions were asked of the plaintiff in the oral examination touching on his political and religious opinions and affiliations, that these questions were asked in a friendly manner designed only to put the candidate at ease, that they were not a part of the test or examination, and that the answers given were not used as criteria for rating the plaintiff.

The object of the legislation with which we are concerned must be considered in solving the issues raised by this appeal. The civil service law provides for the appointment to positions and offices in the governmental service according to merit and fitness to be ascertained by competitive examination. *State ex rel. McNamara* v. *Civil Service Commission*, 128 Conn. 585, 588, 24 A.2d 846. This mandate requires that original appointments to

municipal offices be made as the result of an examination, the results of which show a person to be best qualified, and that competitive examinations be conducted so as to obtain people who manifest their qualifications for the job and thus advance the cause of civil service. *McAdams* v. *Barbieri,* 143 Conn. 405, 421, 123 A.2d 182; *State ex rel. Chernesky* v. *Civil Service Commission,* 141 Conn. 465, 469, 106 A.2d 713; 15 Am. Jur. 2d 465, Civil Service, § 1. One of the commonly accepted purposes and functions of civil service is that appointments be made from lists of properly examined and qualified personnel. *Shanley* v. *Jankura,* 144 Conn. 694, 704, 137 A.2d 536. The purpose of these laws is to ensure the appointment of personnel possessed of the qualifications which are necessary for a fit and intelligent discharge of duties pertaining to public office and to free public employees from the fear of political and personal prejudicial reprisal. *Gagliardi* v. *Ambridge Borough,* 401 Pa. 141, 145, 163 A.2d 418; *United States* v. *Thayer,* 209 U.S. 39, 42, 28 S. Ct. 426, 52 L. Ed. 673. The prohibition contained in the special act under consideration in the present case was intended to eliminate a reversion to political or religious affiliation as a test for the appointment to a position so as to contravene that which had been accomplished in the way of civil service reform.[1] *Howe* v. *Civil Service Commission,* 128 Conn. 35, 38, 20 A.2d 397; *Civil Service Commission* v. *Auditor General,* 302 Mich. 673, 5 N.W.2d 536; *Rogers* v. *Common Council,* 123 N.Y. 173, 25 N.E. 274; *People ex rel. Akin* v. *Kipley,* 171 Ill. 44, 49

---

[1] For a discussion of the history and background of the prohibition of the religious test as a condition for the holding of any governmental office, see *Rogers* v. *Common Council,* 123 N.Y. 173, 188–90, 25 N.E. 274.

N.E. 229, writ of error dismissed, 170 U.S. 182, 18 S. Ct. 550, 42 L. Ed. 998.

There is no way of determining from the record what effect the reply to the questions had on the interviewers in grading the applicant. The law would be difficult to administer if the courts were called on to decide or distinguish whether or not the forbidden questions were intended by an examiner merely to have been made in a friendly manner so as to put one at ease, so that such interrogation became extraneous and therefore not part of the test and not relevant to the final examination grade. The law, by its express terms, precludes questions relating to religious or political opinions or affiliations in testing an applicant regardless of what the interviewer's intention or motivation might have been, even though his fairness is not challenged and his judgment may have been good. No matter what guise is adopted in making such inquiries, the possibility exists that the interview may cease to become an examination of merit and fitness in violation of the mandate of the civil service law. *Matter of Bridgman* v. *Kern,* 257 App. Div. 420, 424, 13 N.Y.S.2d 249, affirmed, 282 N.Y. 375, 26 N.E.2d 299.

Strict compliance with the terms of the civil service law is required where the legislative intention is manifest in the light of the purposes of such a statute. *Detoro* v. *Pittston,* 351 Pa. 178, 182, 40 A.2d 486; see *Curry* v. *Civil Service Commission,* 125 Conn. 344, 346 n., 5 A.2d 846. Good faith of the parties will not validate an illegal appointment and will not be sanctioned by the courts. *Matter of Corwin* v. *Farrell,* 303 N.Y. 61, 66, 100 N.E.2d 135. It is mandatory that every requirement of the civil service law be followed, and proof that substantial

compliance exists is not enough. "The doctrine of substantial compliance has no application to the performance of duty by those entrusted with the administration of the civil service law. It would open the door to abuses which the law was designed to suppress. The law provides for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness have been determined by examination, and to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments." *State ex rel. Kos* v. *Adamson,* 226 Minn. 177, 182, 32 N.W.2d 281.[2]

The examination was illegal and void.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff for such relief as is found proper.

In this opinion the other judges concurred.

---

[2] Provisions similar to the ones contained in the act under consideration are found in the police civil service law which was construed in *State ex rel. Kos* v. *Adamson,* 226 Minn. 177, 180, 32 N.W.2d 281.